JOYNHS, J.
To entitle the plaintiff in the court below to recover in this case, it was incumbent on him to establish that, at the commencement of the suit, the right of the defendant, who had entered into possession as his tenant, had expired, and that he still detained the possession, without the consent of the plaintiff. Code,-ch. 134, $ 1. The lease was for a term of four years, which had not jret elapsed. But it appears from the evidence, that the written lease, which had been destroyed, contained a stipulation that upon a sale of the premises and proper notice of such sale, the defendant was to deliver up possession *of the premises. The plaintiff had made a sale of the premises by execu-tory contract, and given notice of it to the defendant, before the commencement of this action, which proceeds, of necessity, on the ground that the right of the defendant had, by reason of such sale and notice, absolutely ceased and determined.
A clause in a lease designed to abridge *525 the right of the tenant during the period limited for the duration of his estate, may operate in several ways.
1. It may operate as a collateral limitation, sometimes, but as I think, improperly called a conditional limitation, of the tenant’s estate.
A limitation marks the bounds or limits of an estate, beyond which it cannot continue. A. collateral limitation marks an event which may happen within the time described in the direct limitation, and in the happening of that event puts an end to the estate. Thus, a lease to A for twenty years, or until B shall return from Rome, may cease and determine, either by the expiration of twenty years, the time marked for its duration by the direct limitation, or by the happening, within that time, of the event described in the collateral limitation, to wit, the return of B from Rome. In either case, the estate of the tenant will have reached the utmost bounds marked for its continuance by the limitation by which its duration is governed; and so, in either case, the right of the tenant will be absolutely at an end, without entry or other act on the part of the landlord. 1 Prest. E)st. 42-49.
2. It may operate as a condition. While a limitation marks the bounds or compass of an estate, and the utmost time of its continuance, the effect of a condition is to defeat the estate before it reaches the boundary, or has completed the full space of time described by the limitation. 1 Preston Rst. 49. There does not appear, however, to be any ground for contending that the clause under consideration ^operated as a condition. There are no such words in it as of themselves import a condition, and there is no reservation of a right of entry, which is generally necessary to raise a condition, where words which of themselves import a condition are not employed. 1 Washburn Real Prop. 445. The effect of a condition, however, is only to make the lease void at the option of the lessor; and the modern authorities seem to establish that this is so, even where it is provided that the lease shall become void on breach of the condition. Roberts v. Davey, 4 Barn. & Ad. 654, (24 Eng. C. L. R. 136) ; Jones v. Carter, 15 Mees. & Welsb. R. 718; Clark v. Jones, 1 Denio R. 516; Cartwright v. Gardner, 5 Cush. R. 273; Phelps v. Chesson, 12 Ired. Law R. 194. An entry, therefore, would be necessary to put an end to the estate of the tenant. Without such entry the right of the tenant would not expire, and the remedy adopted in this case would not lie.
3. It may operate as a covenant only, having no effect upon the estate either to limit or to defeat it, but giving to the landlord a remedy by an action for damages, or by a suit in equity for a specific execution.
The question in this case, therefore, was, whether the clause which is the subject of discussion, operated as a covenant merely, or as a collateral limitation of the tenant’s estate.
The books abound in nice and critical learning upon what Chancellor Kent justly denominates “the abstruse subject of limited and conditional estates.” It is often difficult to say, upon the construction of the instrument, whether a particular provision is to be regarded as a limitation, a condition, or a covenant. It is a well settled rule, however, that conditions subsequent are not favored in law, and are to be taken stricti juris, because they tend to destroy estates. 4 Kent. Com. 129. The same reason ^applies to a collateral limitation, by which an estate is to be determined within the time marked for its continuance by the primary or direct limitation. And hence it is laid down, that neither conditions nor limitations will readily be raised by mere inference and argument. The intention to create either the one or the other must be clearly ascertained ; but, when so ascertained, it will be allowed a controlling effect. 4 Kent. Com. 132. The same author also lays it down as a rule, that if it is doubtful whether a clause operates as a condition or as a covenant, the courts will incline to the latter construction as most favorable to the tenant. 4 Kent. Com. 132. And the Supreme Court of Massachusetts have held that the same rule must govern where it is doubtful whether the clause operates as a limitation or as a covenant. 3 Cush. R. 285. But, after laying down these rules, Chancellor Kent proceeds as follows: “The distinctions on this subject are extremely subtle and artificial, and the construction of a deed in its operation and effect will, after all, depend less upon artificial rules than upon the application of good sense and sound equity to the object and spirit of the contract in a given case.”
The court below was not called upon, however, to put a construction upon the clause which is the subject of the present controversy; nor are we. The written contract had been destroyed, and the particular terms of it were not submitted to the court by special verdict or otherwise, in order that the court might determine their legal effect. The contents- of the writing were proved to the jury by parol evidence. It was the province of the jury to ascertain from the evidence, as well as they could, what were the terms used in the contract, and to determine, under such instructions as the court might give for their information and guidance, what was their legal effect. Accordingly, the defendant asked the court to give certain instructions *to the jury, some of which were intended to govern them in determining the legal effect and operation of the contract. All of the instructions asked for were refused, and we are now to say whether the refusal was proper.
The instruction, which has been mainly insisted upon in the argument here, and the one which seems to be of greatest importance, is the second. This declared, in substance, that if the written contract contained a stipulation that the defendant was *526 to surrender the possession of the leased premises to the plaintiff in the event of a sale thereof by the plaintiff, then the jury should regard the said provision as having the effect of a covenant merely, and not that of a collateral limitation, and should find for the defendant.
The province of the jury was to ascertain the true intention of the parties, as embodied in the contract. For that purpose, they were to consider the whole contract; not any one provision only, but all its provisions ; not the words merely in which • they were expressed, but their object and purpose, as disclosed by the language, by the subject matter, and the condition and relation of the parties. The effect of the instruction proposed, however, was to declare that such a provision as that supposed in it would necessarily control the construction of the whole contract, and to exclude everything else from the consideration of the jury.
The appropriate technical words to create a limitation are donee; durante, dum, usque, tamdin, and the like, or their English equivalents. But the use of particular words would be an unsafe test of the nature of the estate. 'The same words may be taken sometimes as a condition, sometimes as a limitation, and sometimes as a covenant, according to the circumstances and the evident intent. And the only safe, general rule for determining whether words are words of limitation or not, is to consider whether they *were used to circumscribe the continuance of the estate, and to mark the period which is to determine it. 1 Washburn on Real Prop. 4S9, and books there cited; 4 Kent Com. 132, and note. Booking to the' relations of the parties and the subject matter of the contract, the jury may well have thought that it was the intention of the parties to provide, by the clause in question, that, in the event of a sale, the estate of the tenant should cease and determine. Nothing could be more natural for a person making a lease of property which he wished to sell, than to require and provide that the lease should end upon a sale being made, for he could not otherwise carry the sale into effect. And a man not accustomed to the use of technical language might very naturally express that intention by a stipulation that the defendant should surrender the possession of the premises, in case a sale should be made.
The case of Doe v. Phillips, 2 Bingh. R. 13, (9 Eng. C. B. R. 296,) cited at the bar, and the case of Wheeler v. Driscomb, 3 Cush. R. 285, which approved it, are not inconsistent with the views I have expressed. • The courts in these cases construed the provisions in question in them to be covenants. They did so upon the special circumstances and the established rules of construction. But the particular provisions and special circumstances, as might easily be shown, were very different from those of the present case. As I have said before, however, we are not called upon here to give a construction to the contract on which this case depends, and I need not, therefore, say more in reference to those cases. See the view taken in Allen v. Jaquish, 21 Wend. R. 628. The second instruction was, therefore, properly refused.
The first instruction proposed, in effect declared that the clause in question did not opreate as a limitation of the tenant’s estate, because the provision as to notice was ^indefinite and uncertain in point of time. Neither the law nor the contract required any particular form or length of notice. Any notice which would distinctly inform the tenant that a sale had been made would be ‘ ‘proper” notice. The time at which notice was given could be ascertained by proof, and the maxim of law is, that that is certain which may be rendered certain. The first instruction was, therefore, properly refused.
The remaining instructions asked for were also properly refused, but I think it unnecessary to discuss them.
I am of opinion that the judgment should be affirmed.
The other judges concurred in the opinion of Joynes, J.
Judgment affirmed.